UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANTE RASHAW YOUNG,

        Petitioner,

     v.

KENNETH T. McKEE,

        Respondent.[1]

_____/

CASE NO. 2:08-CV-10417
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| II. | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| | D.    *Bind Over (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| | E.    *Involuntary Plea/Ineffective Assistance of Counsel (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |      1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |      2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | F.    *Sentencing (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| | G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| |      1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| |      2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |

          *        *        *        *        *

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealabilty.

_____

[1] By Order entered this date, Kenneth T. McKee has been substituted in place of Susan Davis as the proper respondent in this action.

II.     <u>REPORT</u>:

A.      *Procedural History*

     1.     Petitioner Deante Rashaw Young is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

     2.     On October 11, 2005, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, pursuant to his guilty plea in the Wayne County Circuit Court.  On October 27, 2005, he was sentenced to a term of 25-45 years' imprisonment on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

     3.     Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

     I.      THE LOWER COURT JUDGE ABUSED HIS DISCRETION BY FAILING TO QUASH THE DISTRICT COURT JUDGE'S BINDOVER OF MR. YOUNG ON FIRST DEGREE MURDER CHARGES.  BY THIS RESULT DEFENDANT WAS DENIED THE RIGHT TO HAVE HIS CASE HEARD BY A JURY AND HIS INVOLUNTARY PLEA OF GUILTY TO SECOND DEGREE MURDER THEREAFTER FOLLOWED.

     II.     MR. YOUNG'S PLEA WAS INVOLUNTARY AND SHOULD BE WITHDRAWN.

     III.    THE LOWER COURT JUDGE ABUSED HIS DISCRETION IN SENTENCING.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *People v. Young*, No. 268384 (Mich. Ct. App. June 14, 2006).

     4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard

order.  *See People v. Young*, 477 Mich. 916, 722 N.W.2d 822 (2006).

    5.    Petitioner, through counsel, filed the instant application for a writ of habeas corpus

on January 29, 2008.  As grounds for the writ of habeas corpus, he raises the three claims he raised

in the state courts.

    6.    Respondent filed his answer on August 11, 2008.  He contends that petitioner's

claims are without merit or not cognizable on habeas review.

B.    *Factual Background Underlying Petitioner's Conviction*

    Petitioner's convictions arise from the shooting death of 12-year-old Robert Pratt in the early

morning hours of April 11, 2005.  The evidence at the preliminary examination established that

petitioner attended a party at the Pratt home on the evening of the shooting.  He was asked to leave

the house, and did so.  He returned about ten minutes later with a gun.  He shot the gun 8 or 9 times,

first into the air and then at the house.  At that time, several people where standing on the porch of

the home.  The victim was in the backyard, where he was taking out the trash.  The victim was

struck in the head, and died from his wound.  Petitioner was charged with first degree murder,

multiple counts of assault with intent to commit murder, discharge of a firearm in a building, and

felony-firearm.

    On the day scheduled for trial, the parties informed the court that a plea agreement had been

reached.  Pursuant to the agreement, petitioner agreed to plead guilty to a reduced charge of second

degree murder and to the felony-firearm charge, in exchange for a sentence of 25-45 years'

imprisonment on the murder conviction plus a two year sentence on the felony-firearm conviction

and dismissal of the remaining charges.  *See* Plea Tr., at 3.  The trial court explained the terms of

the agreement to petitioner, as well as the maximum potential sentence he faced if he went to trial

on the two counts to which he was pleading guilty.  The court also explained that the plea agreement reserved his right to appeal the trial court's denial of petitioner's motion to quash the bind-over on the first degree murder charge.  Petitioner indicated that he understood the agreement.  *See id*. Petitioner denied that there were any other agreements or understandings that had not been placed on the record.  *See id*. at 4.  Petitioner also indicated that he understood the proceedings taking place in the courtroom.  *See id*.  The court explained to petitioner the rights he was giving up by pleading guilty, and petitioner indicated that he understood those rights and that he was waiving those rights by pleading guilty.  *See id*. at 5-6.  Petitioner denied that any promises or threats had been made to induce his plea, and that he was pleading of his own free will.  *See id*. at 6.  The prosecutor then questioned petitioner, establishing a factual basis for the plea.  *See id*. at 8-9.  Both attorneys indicated that they were satisfied with the factual basis and that the court had complied with MICH. CT. R. 6.302, and the court accepted the plea.  *See* Plea Tr., at 9.

At the time of sentencing, petitioner indicated that he wanted to withdraw his plea, claiming that counsel had not adequately represented him and that he was manipulated into taking the plea. *See* Sentence Tr., at 4.  Petitioner stated that he had been coached through the plea proceedings by counsel.  *See id*. at 6.  After hearing the prosecutor's objections to withdrawal, the trial court denied the motion, *see id*. at 14-15, and proceeded to sentence petitioner, imposing the sentence agreed to by the parties in the plea agreement.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Bind-Over (Claim I)*

Petitioner first contends that the trial court erred in failing to quash the bind-over on the

6

charge of first degree murder because the prosecution presented insufficient evidence of premeditation. The Court should conclude that this claim is without merit, for two reasons.[2]

First, petitioner's bind-over claim is not cognizable on habeas review. There is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). Thus, a state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). Similarly, therefore, a claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.). Second, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his trial.

Second, even if petitioner's bind-over claim is cognizable, there was sufficient evidence of premeditation to support the bind-over. The prosecution's burden at the preliminary examination stage is not onerous. As the Michigan Court of Appeals has explained:

> A district court must bind over where the prosecutor has presented competent evidence sufficient to support probable cause to find both that a felony was

---

[2]I address here the bind-over claim only as an independent basis for habeas relief. To the extent petitioner contends the improper bind-over rendered his subsequent plea involuntary, that issue is addressed below in connection with petitioner's involuntary plea claim.

committed and that defendant committed it. [*People v. Northey*, 231 Mich.App. 568], 574-575, 591 N.W.2d 227 [(1998)]. The prosecutor is not required to prove all elements of the offense charged at the preliminary hearing, but must only produce evidence sufficient for a finding of probable cause. "Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged." *People v. Woods*, 200 Mich. App. 283, 288, 504 N.W.2d 24 (1993). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant." *Id*.

*People v. Cervi*, 270 Mich. App. 603, 616, 717 N.W.2d 356, 364 (Mich. Ct. App. 2006); *see also*, *People v. Grayer*, 235 Mich. App. 737, 744 n.3, 599 N.W.2d 527, 531 n.3 (Mich. Ct. App. 1999). "Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v. Justice*, 454 Mich. 334, 344, 562 N.W.2d 652, 657 (1997). With respect to first-degree premeditated murder, "the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995); *see also*, *Grant v. Rivers*, 920 F. Supp. 769, 786 (E.D. Mich. 1996); *People v. Younger*, 380 Mich. 678, 681, 158 N.W.2d 493, 495 (1968); *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). Both intent to kill and "premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Ortiz-Kehoe*, 237 Mich. App. 508, 520, 603 N.W.2d 809 (1999); *accord Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998); *People v. McRunels*, 237 Mich. App. 168, 181, 603 N.W.2d 95, 102 (1999); *Anderson*, 209 Mich. App. at 537, 531 N.W.2d at 786. Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *See id*.; *Brown*, 137 Mich. App. at 407, 358 N.W.2d at 597.

Here, the evidence at the preliminary examination showed that petitioner was asked to leave

the house, and did so without incident.  Although he drove away, he returned about 10 minutes later and obtained a gun from someone across the street from the home.  He then proceeded into the middle of the street, where he fired 8-9 shots, some into the air and some directly at the house.  At the time he fired at the house, people were standing in front of the house and on the porch.  From this evidence, there was probable cause to believe both that petitioner intended to kill someone standing in front of the house and that he deliberated his actions.  He had left the house, only to return and arm himself, suggesting he had time and in fact did premeditate and deliberate his actions.  Further, the fact that he fired several shots directly at the house, in front of which people were standing, provides circumstantial evidence that he intended to kill someone in front of or inside the house.  While petitioner is correct that "[t]here was not a single witness at the preliminary examination . . . stating that Mr. Young aimed the gun at that person or anyone in particular," Pet'r's Br., at 7-8, the absence of this testimony does not compel the conclusion that the information should have been quashed.  As noted above, intent to kill may be inferred from a defendant's actions, and petitioner's firing of several shots into an occupied house gives rise to an inference of an intent to kill.  Further, as explained above, the prosecution was not required to show beyond a reasonable doubt that petitioner intended to kill; it was required only to show a reasonable belief that petitioner possessed that intent.  Petitioner's deliberate actions in obtaining a gun and firing in the direction in which people, with whom he had just had a problem, were sufficient to give rise to a reasonable belief that petitioner intended to kill someone at the house.

Further, it is irrelevant that petitioner did not premeditate and intend the killing of the actual victim.  "The principle of 'transferred intent' makes an actor criminally responsible for the results of his conduct, even thought the person injured is not his intended victim." *State ex rel S.B.*, 755

9

A.2d 596, 599 (N.J. Super. Ct. App. Div. 2000); *accord* 1 LaFave & Scott, Substantive Criminal Law § 6.4(d) (2d ed.). Michigan courts apply the common law doctrine of transferred intent. *See People v. Lawton*, 196 Mich. App. 341, 350-51, 492 N.W.2d 810, 815 (1992); *People v. Youngblood*, 165 Mich. App. 381, 388, 418 N.W.2d 472, 475 (1988). As explained by the Michigan Court of Appeals in a case involving a charge of assault with intent to commit great bodily harm, "[b]efore defendant can be convicted it must first be shown that he had the intention to cause great bodily harm to someone. Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person." *People v. Lovett*, 90 Mich. App. 169, 172, 283 N.W.2d 357, 359 (1979). In other words, it does not matter whom at the home petitioner intended to kill. So long as he intended to kill someone, the requisite mental state for murder is established, even if he ultimately killed someone who was not his initial target. *See Lawton*, 196 Mich. App. at 350-51, 492 N.W.2d at 815; *Youngblood*, 165 Mich. App. at 388, 418 N.W.2d at 475. Because there was sufficient evidence to establish probable cause to believe that petitioner intended to kill someone, his bind-over was proper even if he did not intend to kill the actual victim. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Involuntary Plea/Ineffective Assistance of Counsel (Claim II)*

        Petitioner next contends that his plea was involuntary and a result of the ineffective assistance of counsel. He also contends that the trial court erred in denying his motion to withdraw the plea. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Clearly Established Law*

        A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the

totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an

11

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there

12

would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

    2.    *Analysis*

Petitioner contends that his plea was involuntary. As an initial matter, this claim is belied by the record. At the plea hearing, petitioner indicated that he understood the agreement, the proceedings taking place in the courtroom, and the rights he was waiving those rights by pleading guilty. *See* Plea Tr., at 4-6. Petitioner also denied that any promises or threats had been made to induce his plea, and that he was pleading of his own free will. *See id*. at 6. These statements "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The

13

> factual findings of a state court that the guilty plea was properly made are generally
> accorded a presumption of correctness. Petitioner must overcome a heavy burden if
> the federal court is to overturn these findings by the state court. . . . Additionally, a
> habeas petitioner bears a heavy burden of rebutting the presumption that his or her
> guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich.2001) (Steeh, J.). In short where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).

The only specific argument petitioner makes with respect to voluntariness is his claim that the plea was involuntary because he was improperly bound over on the first degree murder charge, and that he pleaded solely to avoid the mandatory life sentence without parole he faced if convicted of that charge. As explained above, however, petitioner was properly bound over on this charge. Further, he explicitly reserved his right to appeal the bindover issue. Nor can petitioner show that his plea was invalid because it was motivated by the fear of a significantly greater sentence. As the Supreme Court has explained, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751. The Court in *Brady* did explicitly "make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender

14

a plea of guilty." *Id*. at 751 n.8.  However, there is no evidence that the prosecutor vindictively employed his charging powers by charging crimes not supported by the evidence.  As explained above, there was evidence that petitioner both premeditated and intended the killing.  Whether this evidence would have sufficed to prove premeditation and deliberation beyond a reasonable doubt is irrelevant.  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  And because the prosecutor did not vindictively or inappropriately exercise that discretion, petitioner's desire to avoid a potential sentence of nonparolable life imprisonment does not render his plea involuntary.

Petitioner also contends that counsel was ineffective.  In his brief, petitioner does not point to any specific actions or omissions of counsel supporting this claim.  Rather, petitioner's brief points only to his statement at the time of sentencing that there had been a breakdown in communication with his attorney.  *See* Pet'r's Br., at 16.  At the sentencing hearing, petitioner indicated only that in the sixth months in which counsel represented petitioner he filed only a motion to quash, and that he was manipulated into taking the plea.  *See* Sentence Tr., at 3-4.  However, petitioner does not point to any specific actions counsel should have taken which would have affected his decision to plead guilty.  And his claim that he was manipulated into taking the plea is belied by the record, in which he indicated his understanding of the proceedings and the plea agreement and denied that anyone had improperly coerced his plea.  In addition to facing a charge carrying a mandatory term of life imprisonment without parole, petitioner faced a number of additional charges including several counts of assault with intent to commit murder and firing a gun

15

at an occupied dwelling.  In exchange for dismissal of these charges, carrying the most severe sentencing consequences under Michigan law, counsel secured for petitioner a total sentence of 27-47 years' imprisonment.  Counsel also negotiated an agreement reserving to petitioner the right to appeal the trial court's denial of his motion to quash the bind-over.  In the absence of identifying any specific acts or omissions of counsel which would have impacted his decision to plead guilty, petitioner cannot show that counsel was ineffective.

Finally, petitioner contends that the trial court erred in failing to allow him to withdraw his plea.  This claim is not cognizable on habeas review.  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea.  *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979).  Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

This is so notwithstanding petitioner's claim that he is innocent of second degree murder because he did not intend to kill anyone.  As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law."  *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970).  Although *Hansen* was

16

decided nearly forty years ago, this observation holds true today.  It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least.").  Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime.  *See  North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence."  *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea.  Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007).  To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence."  *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001).  Here, petitioner does not have any evidentiary

17

support for his claim of innocence other than his own denial of guilt. Indeed, he does not deny firing the shots that killed the victim; he only denies that he intended to kill anyone. However, intent to kill is not required to support a conviction for second degree murder under Michigan law. Rather, under Michigan law the malice element of second degree murder can be supported by a showing of one of three mental states: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). In particular, with respect to the third mental state, malice may be inferred from evidence that establishes "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted). Here the evidence at the preliminary examination showed, and petitioner does not dispute, that he fired multiple times at an occupied home in front of which several people were standing. This evidence shows, at a minimum, that petitioner acted with the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result–*i.e.*, with malice aforethought. *See Jackson v. Withrow*, No. 99-74892, 2002 WL 482551, at *5 (E.D. Mich. Feb. 28, 2002) (Cohn, J.); *People v. Abraham*, 256 Mich. App. 265, 270, 662 N.W.2d 836, 841 (2003); *People v. Williams*, No. 234936, 2002 WL 31930868, at *1 (Mich. Ct. App. Nov. 15, 2002) (per curiam). Thus, petitioner cannot show that he was entitled to withdraw his plea based on his assertion of innocence.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his involuntary plea, ineffective assistance of counsel, and plea withdrawal claims.

F.      *Sentencing (Claim III)*

Finally, petitioner contends that his sentence was invalid because the trial court improperly scored the sentencing guidelines and because the trial court made findings of fact in imposing sentence in violation of the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Petitioner also contends that counsel was ineffective for failing to raises these arguments at the time of sentencing. The Court should conclude that petitioner is not entitled to habeas relief on his sentencing claims.

Regardless of whether the trial court correctly scored petitioner's sentencing guidelines, and therefore regardless of whether counsel should have objected, petitioner cannot show that he was prejudiced because he agreed to the precise term of imprisonment to which he was sentenced. *Compare* Plea Tr., at 3, *with* Sentence Tr., at 26.  Because petitioner agreed to a particular sentence as part of his plea agreement, any scoring of the guidelines was irrelevant to petitioner's sentence and any deficient performance on the part of counsel in failing to object did not impact petitioner's sentence.  *Cf. Dorie v. Phillips*, No. 1:07-cv-1195, 2010 WL 1258234, at *7 (W.D. Mich. Mar. 8, 2010) (where petitioner agreed to applicable guideline range as part of plea agreement, counsel was not ineffective in failing to object to scoring of the guidelines), *magistrate's report adopted*, 2010 WL 1258233 (W.D. Mich. Mar. 30, 2010).  Likewise, any *Apprendi* error was irrelevant. *See United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (alleged *Apprendi* error in court scoring sentencing guidelines was irrelevant where defendant agreed to specific sentence, and thus his sentence arose from the plea itself and not the guidelines).

Further, petitioner's claims do not entitle him to habeas relief even apart from the fact that the sentence was imposed pursuant to petitioner's plea agreement.  With respect to the scoring of the guidelines, petitioner's claim is not cognizable on habeas review.  A habeas petitioner's claim

19

that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

With respect to the *Apprendi* issue, the claim is without merit because *Apprendi* does not apply to Michigan's indeterminate sentencing scheme. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Court extended this rule to mandatory sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) and *United States v. Booker*, 543 U.S. 220, 237-43 (2005). Michigan law, however, provides for an indeterminate sentencing scheme unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the

defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8.  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. And because the *Apprendi* rule is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea, *see Blakely*, 542 U.S. at 309; *Harris v. United States*, 536 U.S. 545, 557 (2002), it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment.  *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sentencing claims.

G.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

21

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

22

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

  2.  *Analysis*

  If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  With respect to petitioner's bind-over claim, it is clear that the claim does not present an issue cognizable on habeas review, and in any event as explained above there was sufficient evidence presented at the preliminary examination to establish probable cause to believe that petitioner premeditated and intended the killing.  Thus, the resolution of this claim is not reasonably debatable.  With respect to petitioner's plea claims, the record supports the conclusion that petitioner's plea was voluntary, and his desire to avoid a potential sentence of life imprisonment does not render his plea involuntary.  Further, petitioner has pointed to no specific acts or omissions of counsel in support of his ineffective assistance claim, and petitioner had no constitutional right to withdraw his plea.  Thus, the resolution of petitioner's plea claims is not reasonably debatable.  Finally, it is beyond dispute that petitioner's sentencing claims are meritless in light of the fact that petitioner agreed to the

particular sentence imposed by the trial court.  Further, it is clear that petitioner's sentencing guidelines claims are not cognizable on habeas review and that *Apprendi* is not applicable to Michigan's indeterminate sentencing scheme.  Thus, the resolution of petitioner's sentencing claims is not reasonably debatable.  Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

H.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

24

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/1/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on April 1, 2011.

s/Eddrey Butts
Case Manager